Letters may issue.

◄••►►

NEW YORK COUNTY.—HON. D. G. ROLLINS, SURRO-
GATE.—November, 1884.

MATTER OF SUAREZ.

*In the matter of the estate of* BENITA CARRIO DE
SANTOS SUAREZ, *deceased.*

One who has become invested with the office of executor may resign, but cannot renounce the appointment; still less can he retract a renunciation.

Where a person, who has actually received letters testamentary, performed, for a time, the duties of the executorial office, and procured, upon his own application, the revocation of his letters, he becomes a stranger to the estate, as regards any right or privilege previously belonging to him, by reason of his nomination in the testator's will.

It is the manifest purpose of the provision of Code Civ. Pro., § 2639,—allowing the renunciation of an executorial appointment to be retracted in the cases and manner therein specified,—to sanction the doctrine of the courts, which permitted one, who had not only declined to undertake the duties of an executor, but even solemnly declared his refusal to act as such, to withdraw his declinature at any time before the estate should be put into the charge of a representative, or thereafter, when it should cease to be in such charge.

Testator having, by his will, nominated M. and J. as its executors, and letters testamentary having been issued to M. in June, and to J. in September, 1878, the former, in October of the same year, filed a petition setting forth his wish " to renounce the said appointment as executor and all right and claim to letters testamentary," and embodied, in the account filed by him, a declaration that he had renounced the same; whereupon a decree was entered, declaring the acceptance of M.'s

renunciation and revoking his letters.   J., who thereafter entered upon the execution of the duties of the trust, having died in 1884, leaving assets unadministered, M. applied for letters testamentary, filing what purported to be a retraction of renunciation.—

*Held*, that the case was one for the grant of letters of administration with the will annexed, pursuant to the provision of Code Civ. Pro., § 2643, which requires such letters to be issued where the office of legal representative is vacant by reason of the revocation of letters; and that the petition of M. should be denied.

APPLICATION for a decree granting letters testamentary under decedent's will.   The facts appear sufficiently in the opinion.

WEEKES & FORSTER, *for the application.*

THE SURROGATE. — Miguel Garcia, who was appointed by this decedent one of the executors of his will, received, as such, his letters testamentary in June, 1878.   In October of the same year, he filed in this court a petition, setting forth his wish "to renounce the said appointment as executor, and all right and claim to letters testamentary," and to render a final account of all his proceedings in the administration of his trust.   Such account was subsequently filed.   Its "schedule G" contained the following statement:

"I have renounced the executorship and all claims to letters testamentary, and wish to have such letters revoked.   This accounting is had, that the charge of the estate may be transferred to John Garcia, of the city of New York, who is one of the executors named in the will, and who qualified as such on September 30th, 1878.   MIGUEL GARCIA."

Upon this accounting, a decree was entered, in November, 1878, by which, among other things, it

was provided that, upon the making of certain payments and transfers to John Garcia, " the said renunciation, by Miguel Garcia, of his appointment as executor be- and the same hereby is accepted, and that the letters testamentary so as aforesaid granted, etc:, be, and the same are hereby, revoked."

John Garcia entered upon his trust, and, in May last, died, not having fully administered upon the estate. Miguel Garcia, the former executor, now makes application for letters testamentary; and, having filed with the Surrogate an instrument in the nature of a retraction of his renunciation, he claims that he may be lawfully reinstated in the executorship.

It is provided, by § 2639 of the Code of Civil Procedure, that, by an instrument, in writing, signed by him and duly acknowledged, one may renounce an appointment as executor. " Such renunciation," the section goes on to declare, " may be retracted by a like instrument at any time before letters testamentary or letters of administration with the will annexed have been issued to any other person in his place, or after they have been so issued, if they have been revoked, or the person to whom they were issued has died or become a lunatic, and there is no other acting executor or administrator."

This provision respecting the retraction of a renunciation first found its way upon the statute book as a part of the present Code of Civil Procedure. Its manifest purpose was to give legislative sanction to a doctrine which had been repeatedly asserted by the courts of this State—namely, the doctrine that one who had not only declined to take upon himself any

of the duties of an executor, but who had even made solemn declaration of his refusal to act in that capacity, might, nevertheless, retract such refusal at any time before the estate should be put in charge of a legal representative, or at any time thereafter, when it should, for any cause, have ceased to be in such charge.

I am very clear that it is not the design of the statute to allow this privilege of retraction to persons who have actually received letters testamentary, performed for a time the duties of the executorial office and procured, upon their own application, the revocation of letters. Such persons become, upon such revocation, strangers to the estate, so far as regards any right or privilege, which previously belonged to them, by reason of their appointment under the testator's will.

It will appear, upon examination, that, in no reported case, has the right to retract a renunciation been recognized by the courts, save where the retractor had renounced absolutely; that is, had rejected his title of executor and refused to take and receive letters (Judson v. Gibbons, 5 *Wend.*, 224; Robertson v. McGeoch, 11 *Paige*, 640).

In such cases, it was the theory of the common law that, as an executor's right to administer sprang from his testator's will, he could claim the exercise of that right, despite previous renunciation, whenever his testator's estate was without any lawful representative (House v. Lord Petre, 1 *Salk.*, 311); that he was not, by virtue of such renunciation, divested of his interest nor discharged from his trust.

But if, on the other hand, he had at any time exercised the functions of executor and intermeddled with the effects, he lost thereby, as has been repeatedly determined, his right to renounce (Jackson v. Whitehead, 3 *Phill.*, 577; McDonnell v. Prenderghast, 3 *Hagg. Ecc.*, 212), and, in the nature of things, could never thereafter be in a situation to *retract* a renunciation.

The case of Trow v. Shannon, (59 *How. Pr.*, 214), is one which closely resembles the present in many of its most important features.  Testator appointed A. and B. as his executors.  Both of them qualified and acted.  After a time, A. applied to this court for the revocation of his letters, and the same were revoked.  A. then filed with the Surrogate an instrument in writing, duly executed and acknowledged, whereby he renounced his office as executor.  B. continued to administer the estate until his death, when letters of administration, *de bonis non*, with the will annexed, were issued to a residuary legatee entitled under the statute.

An action was subsequently brought by A., for the construction of the testator's will.  Van Vorst, J., at Special Term of the Supreme Court, held that such action could not be maintained, and dismissed the complaint.  It has been claimed that the reasons assigned for this dismissal contain an intimation that the plaintiff's right of retracting his renunciation might, perhaps, have been recognized, but for the fact that letters of administration, *c. t. a.*, had been already issued to another person.

The language of the court does not, I think, convey

any such notion. The two prominent facts which there thrust themselves upon the attention were: 1*st.*, that no attempt had been made by the plaintiff to retract his renunciation; and 2*d.*, that the estate was then actually in charge · of a duly appointed administrator.

In view of the latter circumstance, the decision that the plaintiff could not retract his renunciation, because, after the appointment of an administrator, it was too late for him to do so, by no means involves an intimation that, at any time before such appointment, he was in a position to have made a retraction effective.

The letters of the present applicant were revoked in pursuance of authority conferred upon the Surrogate of this county by L. 1870, ch. 359, § 3. A general provision, giving similar power to Surrogates throughout the State, now appears in §§ 2689 and 2690 of the Code of Civil Procedure. Section 2693 of that Code declares that, " Where all the executors, or all the administrators to whom letters have been issued, die or become incapable, . . . . . or the letters are revoked as to all of them, the Surrogate must grant letters of administration to one or more persons as their successors, in like manner as if the former letters had not been issued."

So, too, it is provided by § 2643 that " if, at any time, by reason of death, incompetency, . . . . . renunciation or . . . . . *revocation of letters*, there is no executor or administrator with the will annexed, qualified to act, the Surrogate must, upon the application, etc., . . . . . issue letters of administration

with the will annexed as follows" (specifying the order of priority).

I hold, therefore, that this petitioner has no claim to letters, and that his application must be denied.