## MARY C. GRINNELL *et al*. *vs.* A. PRESCOTT BAKER *et als.*

A testator directed his executor, after the death of his widow, to "invest and keep invested in some safe and profitable manner, if the same has not been already invested," $12,000, and of the income to pay a certain sum to B. and the residue to C.

Within a month after the widow's death the executor made entries in his book of accounts in favor of B. and C. of investments belonging to the estate, adding a small deposit made in a savings bank to complete the $12,000. He paid to B. the certain sum, and to C. the residue of the income for three years, when a bank whose stock was included in the entries failed, and no further payments were made to C. The executor's yearly accounts to the probate court included the $12,000 as part of the estate, but showed the payments to B. and C. The year after the bank failed the executor resigned, and turned over this trust fund, with the rest of the estate, to his successor as administrator.

*Held*, that the trust was constituted by a sufficient setting apart of the required funds, and that the loss by the bank failure fell on the trust funds set apart, and not on the general estate.

*Held*, further, that the setting apart was not invalid because made without consulting the *cestuis*, the setting apart being left to the executor by the will, and the property set apart being entered on the books at its market value.

The ordinary duties of an executor are to take possession of the chattels and credits of the testator, pay his debts and legacies, and distribute the residue as directed by the will. If to these duties the will adds the power and duty to invest parts of the estate, and to pay over the income of such parts invested, a trust is created, and the executor as to such parts is not an executor, but a trustee.

When no provision is made by the will to pay the taxes and other expenses of a testamentary trust, they must be paid from the income of the trust estate.

When a will directed the executor " to invest and keep invested in some safe and profitable manner, if the same has not been already invested, the sum of $12,000," the executor acts properly in setting aside, at their market value, investments made by the testator and thus constituting the trust fund.

BILL IN EQUITY for the constitution of a trust and the appointment of a trustee. Heard on bill, answers and an agreed statement of facts, and subsequently on exceptions to a master's report.

*Providence, May* 17, 1890. DURFEE, C. J. The question in this case arises under the will of William S. Vose, late of Newport, who died October 5, A. D. 1880. The will was admitted to probate November 8, A. D. 1880, and his widow, Catherine M. Vose, and Augustus P. Sherman, named therein as executors, qualified as such. Said Catherine died May 19, A. D. 1882, and said Sherman afterwards served alone until December, A. D. 1885, when he resigned, and the defendant, A. Prescott Baker, was appointed administrator *de bonis non* with the will annexed and qualified.

The will makes provision for the testator's widow, his son, William S. Vose, his son's children, and his two sisters, and directs the executors to sell a house and lot on Bath Road as soon as they can, but without sacrifice, and invest the proceeds and use the income or interest in carrying out the provisions of the will. This sale has not been made. The will gives to said son, after the widow's death, the income and interest of six thousand dollars for his life. It also directs the executors, after the widow's death, " to invest and keep invested in some safe and profitable manner, if the same has not been already invested, the sum of twelve thousand dollars," and out of the income thereof to pay to the testator's daughter, Mary Catherine Grinnell, yearly during her life, the sum of $416 in two equal semi-annual payments, and also, during her life, to

pay the rest of the income, if any, to his granddaughter, Catherine Williams, the daughter of said Mary, and in case of her death during the life of said Mary, leaving children, to pay the same to said children. After the death of said Mary the will directs a further disposition of the interest and principal of said sum of $12,000. Said Mary Catherine Grinnell and said Catherine Williams are still living.

In May, 1882, the month the widow died, the surviving executor, Sherman, intended to set apart said fund of $12,000 in conformity with the directions of the will, and made upon his books in which he kept his accounts with the estate the entry following, to wit: —

*To Catherine Grinnell and daughter Cath. Williams:*

| | | | |
|---|---|---|---|
| Income of Mortg. of John Caswell . . . . $5,000—7 | | | $350 00 |
| "      " 20 shares Amer. Ex. Bank, estimated 2,500 | | | 140 00 |
| "      " 26 "   Metr.      "      "      4,420 | | | 260 00 |
| Dep. in Sav. Bank, cash. . . . . . . . . . 80 | | | |
| | | $12,000 | $750 00 |
| Less Tax (estimate) . . . . . . $50 00 | | | |
| Probate and adv. . . . . . . . . . 2 38 | | | |
| Executor's services . . . . . . . 75 00 | | | 127 38 |
| | | | $622 62 |

*To W. S. Vose:*

| | | |
|---|---|---|
| Income of Fadden Mortg. . . . . . . . . $6,874—6 | | $412 44 |
| Less probable expenses, Tax . . . . . $69 00 | | |
| Probate and adv. . . . . . . . . . . . 2 37 | | |
| Executor . . . . . . . . . . . . 25 00 | | 96 37 |
| | | $316 07 |

In accordance with the entry, Sherman deposited the sum of $80 in his name as executor in the Savings Bank in Newport, and Mrs. Grinnell and William S. Vose were informed, but not in writing, that the funds were set apart. Sherman subsequently applied the income of the $12,000 fund agreeably to the entry, *i. e.* he paid Mrs. Grinnell $416 a year and Mrs. Williams $206 a year

until A. D. 1884, when the Metropolitan Bank of New York ceased to pay dividends and went into liquidation, since when Mrs. Grinnell has received her amounts in full, but Mrs. Williams has received nothing. The twenty-six Metropolitan Bank shares were appraised in the inventory at $3,120, and the twenty shares of the American Exchange National Bank stock were appraised at $2,000, but at the date of said entry the quotations of sales of said shares in the market showed their value to be as set down.

Said Sherman, after making said entries, settled his accounts as executor in the probate court, in the years 1882–1885, inclusive, in December of each year. These amounts do not show any charging off or setting apart of the property entered in his books for the trusts; but, on the contrary, the property keeps its place in the accounts as part of the estate, and was turned over to Baker as such on his appointment in December, 1885. The accounts, however, show payments to Mary Catherine Grinnell of $208 in November, 1882, of $208 in May and in November, 1883 and 1884, and of $208 in May, 1885, and also of payments to Catherine Williams of $103.31 in 1882, of $103.31 in May and in November, 1883, and of $103.31 in May, 1884, in which last named year the Metropolitan Bank failed.

The question is, whether enough was done by Sherman to make the trust in favor of Mrs. Grinnell and Mrs. Williams attach to the property, entered for them on his book, separately from the rest of the estate. If there was, the loss falls thereon; if there was not, the loss falls on the estate generally.

The question is such a one as is likely to arise under any will that invests the same person with the double character of executor and trustee, unless the estate for the trust is specifically given, or some unmistakable act of appropriation is directed. If Sherman had sold the real estate, and invested the proceeds to the amount of $12,000 in his own name as trustee for Mrs. Grinnell and Mrs. Williams, or if he had transferred into his own name as such trustee the mortgage, stocks, and deposit entered on his book for them, the appropriation would have been so complete that no question would have arisen. It is not contended that so complete an act was necessary. *Dix* v. *Burford*, 19 Beav. 409. The contention is, that what was done by Sherman was tantamount merely to

an appropriation in his own mind, which, it is well settled, is insufficient. *Miller & wife* v. *Congdon, Executor,* 14 Gray, 114; *Probate Court of Scituate* v. *Angell,* 14 R. I. 495, 498. We think this view is not tenable. Said Sherman was directed "to invest and keep invested in some safe and profitable manner, *if the same has not been already invested,* the sum of twelve thousand dollars," plainly signifying that, if the executor found satisfactory investments already existing, he might adopt them for the trust. He did adopt the investments entered on his book to the extent of entering them on his book, a book in which he kept his accounts with the estate. In considering the significance of this entry it is to be remembered that he was directed to make the appropriation immediately after the widow's death, and that this entry was made the very month of her death. Besides the entry there was a deposit of the eighty dollars required to make up the sum of $12,000, and Mrs. Grinnell was informed that the fund had been set apart. She subsequently received the $416 which she was to have out of the income of such a fund; and Mrs. Williams, who was only to have, under the will, the residue of the income, received $206.62 until the failure of the Metropolitan Bank, so that she also must have known that she was receiving it from a particular fund. It seems to us that these things show, at least *primâ facie,* an overt appropriation, and that, but for the fact that Sherman went on settling his accounts with the court of probate, without any express indication therein of the appropriation, its sufficiency would be beyond question. The accounts, however, showed the payments to Mrs. Grinnell and Mrs. Williams, and those payments could have been accounted for to the court of probate only by making known the setting apart of the fund. And, for the rest, it is probable that neither Sherman nor the court realized that, by the setting apart, Sherman's duty as executor had merged in his duty as trustee, the more especially as there had been no transfer of the legal title of the mortgage and stock so set apart. This also explains the delivery of the fund to Baker.

It is urged against the sufficiency of the setting apart, that Mrs. Grinnell and Mrs. Williams were not consulted in regard to the revaluation of the stocks. It would doubtless have been well for Sherman to have consulted not only Mrs. Grinnell and Mrs. Wil-

liams, but also all who were affected by it, since others were affected; but we do not think his neglect to consult them invalidated the appropriation, since said stocks were fairly appraised at their market value, and the appropriation is left to Sherman by the will.

Our conclusion is, that there was a sufficient setting apart, and that the loss must fall on the trust as thereby established.

The cause was then referred to a master to take an account of the trust fund. The complainant filed exceptions to his report.

*Providence, January* 23, 1892. MATTESON, C. J. This suit is before us upon the complainants' exceptions to the master's report.

By the will of William S. Vose, deceased, his executors were directed, from and after the death of his wife, to invest and keep invested in some safe and profitable manner, if the same had not been already invested, twelve thousand dollars, and from the income of the same to pay to his daughter, the complainant, Mary Catherine Grinnell, the annuity of four hundred and sixteen dollars for and during the term of her natural life, said annuity to be paid in equal sums semi-annually; and also to pay the remainder of the interest of the twelve thousand dollars, if any, during the lifetime of Mrs. Grinnell, to his granddaughter, the complainant, Catherine Williams.

After the death of the testator's widow, who was one of the executors, in May, 1882, the surviving executor, Augustus P. Sherman, set apart a certain mortgage and certain bank stocks appraised by him at their then market value, which were portions of the estate of the deceased, towards the fund of twelve thousand dollars directed to be invested, and deposited in a savings bank a sum sufficient to make up the residue of that amount. Thenceforth he paid over to Mrs. Grinnell and Mrs. Williams the income of the twelve thousand dollar fund so constituted, less taxes, charges, and expenses, until the failure, in 1884, of the Metropolitan Bank of New York, one of the banks whose stock had been included in the fund set apart. After this bank ceased to pay dividends, the income of the fund, less taxes, charges, and expenses, was insufficient for the payment to Mrs. Grinnell of the whole of her annuity, and nothing has remained to be paid to Mrs. Williams, and nothing has been paid to her.

On December 21, 1885, Augustus P. Sherman resigned his office as executor, and thereupon the respondent Baker was appointed administrator *de bonis non*, with the will annexed, of the estate of the deceased, and duly qualified himself as such. From the time he was so appointed and qualified, Baker took upon himself the control and management of the estate of the deceased, and has collected the rents and income therefrom, including the said fund of twelve thousand dollars. Being desirous of resigning his office of administrator, he tendered his resignation to the court of probate of Newport, and presented to that court an account of his dealings with the estate. Thereupon, on January 8, 1889, the complainants filed this bill, in which they pray for the appointment of a trustee under the will of the deceased, and that, when appointed, such trustee may be directed to set aside and invest the sum of twelve thousand dollars for the benefit of the complainants, which they aver in the bill had not been done ; that the respondent Baker render an account to this court of his dealings with the estate of the deceased ; that the amount due to Mrs. Williams may be ascertained, and the trustees to be appointed be directed to pay the same to her ; and for general relief.

The cause was heard at a former term upon the question whether there had been such a setting apart from the rest of the estate, by the surviving executor Sherman, of the mortgage, bank shares, and money deposited in the savings bank making up the twelve thousand dollars, as to impress upon them a trust in favor of the complainants, or, in brief, whether the trust had been sufficiently constituted. The court held that it had, and consequently that the loss incurred by the failure of the Metropolitan Bank must fall upon the trust fund so established, instead of upon the estate generally. Thereupon a decree was entered that the trust fund had been duly set apart by said Sherman as executor, that his accounts theretofore filed in the probate court be approved, and his resignation as trustee be accepted, and that the cause be referred to a master to take an account of the said trust fund in the hands of the respondent Baker, from and after the last payment to Catherine Williams on May 19, 1884, and to report thereon to this court. The master has taken the account so ordered, and has filed his report. To this account and report the exceptions under consideration relate.

The first four exceptions are to the allowance by the master of the fees or commissions charged by the surviving executor Sherman and the administrator Baker respectively as compensation for services, and of the expenses incurred by them in the administration of the trust, and of the taxes paid by them upon the fund of twelve thousand dollars, as properly payable out of the income of the fund.

It is contended in behalf of the complainants that the master erred in making the allowances, because the four hundred and sixteen dollars directed to be paid to Mrs. Grinnell is an annuity so called and so described in the will; that an annuity so directed to be paid by executors must be paid in full, without deductions for taxes, commissions, expenses, or anything else; that there is a distinction between income and annuity, in that the former may embrace only net profits, while the latter is a fixed amount to be paid absolutely, without contingency and free from all charges. We do not think the argument can prevail. Although the will speaks of the four hundred and sixteen dollars to be paid to Mrs. Grinnell as an annuity, and although an annuity implies a fixed amount payable absolutely, it is nevertheless to be paid to her out of the *income* of the fund to be invested. No provision is made for the payment of it in case the income is insufficient, nor is its payment charged upon the residue of the estate. The testator apparently supposed that the income of the twelve thousand dollars would, in any event, be sufficient for the payment of the four hundred and sixteen dollars, after deducting all charges for taxes and expenses of the trust, and also leave something to be paid to Mrs. Williams, as it doubtless would have been but for the unfortunate failure of the Metropolitan Bank, and the consequent loss of a part of the principal and corresponding reduction of the income. Taxes and the charges and expenses attending the execution of the trust must be paid. We find no provision in the will for the payment of them, and therefore the ordinary rule that they are to be paid out of the income must apply. *Walcott* v. *Pitcher*, 7 R. I. 555, 562; *Butterbaugh's Appeal*, 98 Pa. St. 351, 352, 353; *Pinckney* v. *Pinckney*, 1 Bradf. 269, 275; *Hepburn* v. *Hepburn*, 2 Bradf. 74, 76.

The case at bar is very different from the following cases cited in behalf of the complainants. *Ex parte McComb*, 4 Bradf. 151, and *Stewart* v. *Chambers*, 2 Sandf. Ch. 382, were cases in which the

annuities were *charged* upon the *entire residue* of the estate. *Craig* v. *Craig*, 3 Barb. Ch. 76, was a case in which the executors were directed to invest such a sum as would produce a certain clear net income of five hundred dollars a year. *Mosely* v. *Marshall*, 22 N. Y. 200, was a case in which, there being no provision in the will for the payment of the interest on certain mortgages on real estate devised to a widow for life during the life estate, it was held that, as it was the evident intention of the testator that the widow should have " the rents, issues, and profits " of the estate devised as an *entirety*, the interest should be paid at the expense of the residuary devisees and legatees, and that the executor was, therefore, bound to keep it down out of their estate.

*Drake* v. *Price*, 5 N. Y. 430, was also cited in behalf of the complainants. In that case it was, indeed, held that executors, in making, in pursuance of the directions of the will, an investment of a portion of the testator's estate, and in collecting and paying over the interest of the investment to the person to whom they are directed by the will to pay the same annually for life, act as *executors* and not as *trustees*, and hence that their commissions are a charge upon the estate generally, and not upon the income received and paid over. Such, however, is not the rule in this State. The ordinary powers and duties of an executor are, to take possession of the goods and chattels of the testator; to collect the debts due to him; to sell the goods and chattels, so far as may be necessary for the payment of the testator's debts and the pecuniary legacies and expenses of administration; and to distribute the residue of the assets among the persons entitled to them under the provisions of the will. If to these ordinary powers and duties there is superadded the power and duty to invest portions of the testator's estate and to pay over the income, such power and duty, being appropriate to the office of a trustee rather than of an executor, are held to constitute a trust, and the executor in executing them is regarded as a trustee and not as executor. *Pomroy* v. *Lewis*, 14 R. I. 349, 352; *Belcher* v. *Branch*, 11 R. I. 226; *Peck* v. *Smith*, 16 R. I. 260; *Peck* v. *Providence Gas Co.*, *infra*. Being a trustee, his charges for compensation and expenses, in the absence of any provision in the will for their payment, must be taken from the income of the trust fund; otherwise the fund upon

termination of the trust cannot go in its entirety to the persons then entitled to it under the provisions of the will.

We are of the opinion that the master did not err in making the allowances which are the subjects of the first four exceptions. These exceptions are, therefore, overruled.

The fifth exception is, that the master has not found and reported that a portion of the twelve thousand dollars has been lost, and that it is the duty of the trustee to supply or replace the amount lost from the rest of the estate left by the testator, and so keep the amount of twelve thousand dollars invested, in order that the full income from the sum may be obtained.

The contingency of a loss of a portion of the fund was apparently not present to the mind of the testator in framing his will. At all events, the will does not charge the maintenance of the fund upon the residuary or any other part of his estate, nor make any provision whereby a loss happening to the investment is to be made good, but purports to dispose of all the estate of which the testator was possessed at his death. Assuming, then, that the master had found and reported the loss, and that it was the duty of the trustee to supply or replace the sum lost, as the complainants insist he should have done, it would not have availed them, since property given to others, or held for their benefit, could not be taken to make up the loss. The fifth exception is, therefore, overruled.

Counsel for the complainants claims in his brief that the twelve thousand dollars has never been invested, and criticises the action of the executor, in that, instead of investing anew the sum specified, he set apart from the estate certain stocks and securities, and for this purpose designated, in part, stocks of a fluctuating value, at a time when their market value was much above their par value; and he contends that, even if the executor had the right to thus make the investment, he had no right to value these stocks above their par value, or, at any rate, above their appraised or inventoried value in the inventory of the testator's estate. These considerations could not properly have been urged before the master, nor do they appear to have been so urged; nor are they embraced in the exceptions to the master's report. If the complainants had wished to be heard upon them, they should have

been brought to the attention of the court at the hearing upon the bill, or by a petition for rehearing filed within a year after the entry of the decree. *Franklin Savings Bank* v. *Greene*, 14 R. I. 1; *Randall* v. *Peckham*, 11 R. I. 600. With reference to them, however, it may be said that the direction was to invest and keep invested, "if the same has not been already invested," etc. We think it was entirely competent for the executor, under this direction, to constitute the fund out of the investments which were a part of the testator's estate, if they were such as a prudent man would have deemed safe and advantageous for those to be benefited by the provision, instead of selling them and investing the proceeds anew. Nor do we think that it was improper that in doing so he appraised the stocks at their market value at the time they were set apart. If he had not so appraised them, others interested in the estate would have had good ground of complaint.

While we sympathize with the complainants in their loss, it is a misfortune which we are powerless to remedy.